IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANTOINE D. WILSON,

        **Plaintiffs,**

  v.                                   Case No. 2:04-cv-918
                                              Magistrate Judge Norah McCann King

**REGINALD WILKINSON,** *et al*.

        **Defendants.**

**OPINION AND ORDER**

      Plaintiff is an African-American incarcerated at the Southern Ohio Correctional Facility. He brings this action under 42 U.S.C §1983, alleging that Defendants' directive that he provide a deoxyribonucleic acid ("DNA") specimen pursuant to the Ohio DNA Act, Ohio Revised Code ("O.R.C.") §2901.07, violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the State of Ohio. Plaintiff asks that Defendants expunge all his DNA records from state and federal databases and destroy his DNA specimen. Additionally, Plaintiff asks that Defendants be permanently enjoined from conducting further DNA testing on him and from disclosing his DNA record. Finally, Plaintiff requests a declaration that the Ohio DNA Act is unconstitutional on its face and as applied to Plaintiff and to all similarly situated African-Americans. This matter is before the Court on Plaintiff's Motion to Compel Discovery. (Doc. # 13). For the reasons that follow, Plaintiff's Motion is hereby **GRANTED**.

**I.    RELEVANT BACKGROUND**

      Ohio's DNA Act requires that persons convicted of certain felonies and misdemeanors

submit to a DNA specimen collection procedure. (Compl. ¶ 10). The DNA Act also requires that the specimens be analyzed to create DNA records for entry into a computer database operated and maintained by the Ohio Bureau of Criminal Identification and Investigation ("BCI"). (*Id.*) BCI operates a state laboratory in London, Ohio and also utilizes private laboratories located throughout Ohio to conduct DNA analyses. (Compl. ¶ 17).

Plaintiff alleges that the maintenance, preservation and security of the DNA specimens are insufficiently regulated and, thus, are vulnerable to abuse. (Compl. ¶ 21). Plaintiff also alleges that the DNA database, which is created and maintained by BCI, (Compl. ¶ 24), is insufficiently regulated and, thus, is also vulnerable to abuse. (Compl. ¶ 27).

On January 20, 2005, Plaintiff served upon Defendants a Request for Inspection of Property pursuant to Rule 34 of the Federal Rules of Civil Procedure ("Federal Rules"). (Affidavit of Gina Russo[1] ("Russo Aff.") ¶ 2, attached to Plaintiff's Motion to Compel and Exhibit 1 attached thereto). Plaintiff's request sought permission for Plaintiff's attorneys and an expert to enter the BCI Laboratory "to inspect and observe the process of DNA analysis, coding and maintenance of DNA specimens and of the DNA database." (*Id.*) Plaintiff also requested that the "laboratory equipment, accessories, and/or modalities" used in those processes be made available "for inspection, surveying, photographing, and videotaping." (*Id.*, Exhibit 1 attached thereto).

On February 22, 2005, Defendants objected to the inspection "due to numerous security and safety concerns." (*Id.* ¶ 3, Exhibit 2 attached thereto). On March 11, 2005, Plaintiff renewed his request for inspection and, on March 31, 2005, Defendants renewed their objections.

---

[1] Gina Russo is one of Plaintiff's attorneys. (Russo Aff. ¶ 1).

(*Id*. ¶¶ 5, 7, Exhibits 3 and 5 attached thereto).

On May 9, 2005, Plaintiff filed his Motion to Compel Discovery under Rule 37 of the Federal Rules.  (Doc. # 13).  In that Motion, Plaintiff asks that his representatives be permitted to enter the BCI Laboratory for an inspection pursuant to Rule 34(a)(2) of the Federal Rules.

Rule 37 of the Federal Rules permits a party to seek an order compelling inspection if another party fails to respond to a Rule 34 inspection request, provided that the motion includes a certification that the movant has in good faith conferred or attempted to confer with the party failing to allow the inspection.  Fed. R. Civ. P. 37(a)(2)(B).  The Court is satisfied that the prerequisites to Plaintiff's motion have been met in this case.

## II.     STANDARD OF REVIEW

Determining the proper scope of discovery falls within the broad discretion of the trial court.  *See Crawford-El v. Britton,* 523 U.S. 574, 598 (1998);  *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 402 (6th Cir. 1998).  Plaintiff's Request for an Inspection arises in the context of Rule 34 of the Federal Rules, which in pertinent part provides:

> Any party may serve on any other party a request . . . to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

Fed. R. Civ. P. 34(a)(2).

A party's "request comes within the literal language of Rule 34(a)(2) if the proposed entry and inspection 'are within the scope of Rule 26(b).'" *Eirhart v. Libbey-Owens-Ford Co.*, 93 F.R.D. 370, 371 (N.D. Ill. 1981) (quoting Rule 34);  *see also Cuno Inc. v. Pall Corp*., 116 F.R.D. 279, 281 (E.D.N.Y. 1987) ("Inspection is permitted, and indeed anticipated, by Rule

3

34(a), to be governed by the scope of Rule 26(b).").

Rule 26 of the Federal Rules provides that the "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" and, to be discoverable, "the information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Varga v. Rockwell International Corp*., 242 F.3d 693, 697 (6th Cir. 2001) (discussing the breadth of Rules 26 and 34); *Miller v. Federal Express Corp.,* 186 F.R.D. 376, 383 (W.D. Tenn. 1999) (relevance for discovery purposes is extremely broad).

Notwithstanding the relevance of the proposed inspection, a challenge "may be made on any ground that would support an application for a protective order under Rule 26(c)." 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2213 at 428 (1994) (citing 1970 Advisory Committee Note to Rule 34(b) and referencing the Committee Notes to Rule 33(a), which reflect that a responding party "may choose to seek a protective order under new Rule 26(c)"). Rule 26(c) provides that, "for good cause shown," a court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

Where a responding party exercises its rights under Rule 26(c), and objects to a Rule 34 inspection, the court should balance the parties' conflicting interests. *Minnesota Mining & Manufacturing Company, v. Nippon Carbide Industries Co., Inc*., 171 F.R.D. 246, 248 (D. Minn. 1997) (citing *Belcher v. Bassett Furniture Indus*., *Inc*., 588 F.2d 904, 908 (4th Cir. 1978)). Specifically, "the court should balance the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *McKesson Corp.*

4

*V. Islamic Republic of Iran*, 185 F.R.D. 70, 76 (D. D.C. 1999) (citing *New York State Assoc. for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 960 (10th Cir. 1983) and *Belcher,* 588 F.2d at 908).

### III.     ANALYSIS

Plaintiff requests that his attorneys and an expert be allowed to enter the BCI Laboratory in London, Ohio, to observe the process of collecting, analyzing, coding and recording DNA specimens and records. Plaintiff also requests the opportunity to observe the equipment utilized in the storage and maintenance of the DNA specimens and records.

Defendants, relying on *Belcher*, 588 F.2d at 908, argue that the burdens and dangers of the requested inspection outweigh its utility in the search for the truth concerning Plaintiff's claims.

#### A.     **Relevant of the Requested Inspection**

Defendants argue that Plaintiff's requested inspection will not advance his search for the truth with regard to his claims because his claims are limited to the collection of his DNA sample. The Court disagrees.

Plaintiff challenges the Ohio DNA Act both on its face and as applied. The Ohio DNA Act addresses all aspects of the collection, analysis, coding and recording of DNA, as well as the creation and use of the DNA database. *See* O.R.C. §2901.07(C). Furthermore, the statute impacts not only Plaintiff but also all similarly situated Ohio inmates.

This case presents important issues the presentation and resolution of which will require some degree of specialized knowledge of technical matters. The requested inspection would allow Plaintiff's counsel and expert to become familiar with the processes, machinery and

equipment at issue in this case before conducting depositions – a process that can only benefit Defendants as well as Plaintiff. "When important civil rights are in issue in complex litigation of widespread concern, a court must make every effort to enhance the fact-finding process available to counsel for both sides." *Morales v. Turman*, 59 F.R.D. 157, 159 (E.D. Texas 1972) (granting plaintiff's motion to compel inspection in civil rights case).

Thus, the Court concludes that inspection of the BCI Laboratory falls squarely within the scope of discovery permissible under Rule 26(b)(1). The inspection is relevant to the subject matter involved in the pending action, the information sought is reasonably calculated to lead to the discovery of admissible evidence and Defendants do not claim that the information that would be obtained through the inspection is privileged. *See* Fed. R. Civ. P. 26(b)(1); *Miller v. Federal Express Corp.,* 186 F.R.D. at 383 (relevance for discovery purposes is extremely broad). Thus, the Court concludes that the requested inspection will advance Plaintiff's search for the truth with regard to his claims. *See Belcher*, 588 F.2d at 908.

### B. The Burdens and Dangers of the Requested Inspection

Notwithstanding the relevance of the proposed inspection, a challenge to the proposed inspection "may be made on any ground that would support an application for a protective order under Rule 26©)." 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2213 at 428 (1994) (citations omitted) (Rule 26(c) allows a court to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Defendants argue that the requested inspection of the BCI Laboratory would impose an undue burden.

First, it is the policy of BCI to "prohibit the presence of outside observers or investigators

6

whose purpose is to observe the performance of forensic tests and examinations." (Affidavit of Cynthia Shannon[2] ("Shannon Aff.") ¶ 2, attached as Exhibit A to Defendants' Opposition). Second, the BCI Laboratory is a secure environment and the presence of outside observers may jeopardize the security of the Laboratory and its personnel. (Affidavit of D. Steven Greene[3] ("Greene Aff.") ¶ 2, attached as Exhibit B to Defendants' Opposition).  In this regard, BCI's accreditation by the American Society of Crime Laboratory Director's Accreditation Board requires that it ensure the security of the Laboratory space and the safety of its personnel. (*Id.*) Third, outside observers are at risk of exposure to toxicants and other dangerous substances used in testing. (*Id.* ¶ 5). Fourth, the requested inspection might expose confidential material to improper scrutiny, thereby resulting in the contamination of evidence and Privacy Act violations. (*Id.* ¶ 3). Finally, the inspection could distract the BCI staff. (*Id.* ¶ 4).

Defendants' own actions, however, belie these concerns. At various times, students have been permitted to tour the BCI Laboratory and local television news personnel have been permitted to film DNA analyses inside the BCI Laboratory. (Shannon Aff. ¶ 3). Defendants offer no evidence that this access jeopardized either the Laboratory's operations or accreditation, nor is there evidence that those granted access to the Laboratory were subjected to unreasonable risk of injury.

Defendants explain, however, that these previous tours were "staged" and did not involve "actual" DNA evidence. (Shannon Aff. ¶ 3).  Further, the tours were brief in duration and were

---

[2] Cynthia Shannon is the Combined DNA Index System Administrator for the Ohio Attorney General's Office/BCI.  (Shannon Aff. ¶ 1).

[3] D. Steven Greene is the Deputy Superintendent of Laboratory Operations for the Ohio Attorney General's Office/BCI.  (Greene Aff. ¶ 1).

only minimally intrusive. (*Id*.). Thus, Defendants argue, these previous tours of the BCI Laboratory differed significantly in scope from the "unfettered access sought by the plaintiff." (Defendants' Opposition at 5). The Court is unpersuaded.

Plaintiff concedes that his inspection of the BCI Laboratory may be subject to close controls. Specifically, Plaintiff agrees to reasonable measures necessary to protect the integrity of the operations of the Laboratory and the safety and welfare of its personnel and of those conducting the inspection. Plaintiff agrees not to interrogate the BCI staff or personnel and agrees to conduct the inspection at a time that is least intrusive to Defendants. In addition, the parties have agreed to terms of a protective order governing the discovery and disclosure of secure or confidential material. (Doc. # 29). Moreover, and important in the Court's view, Plaintiff does not object to the "staging" of the processing and analysis of DNA rather than the use of "actual" DNA. Under these circumstances, Plaintiff's requested inspection is no more objectionable than were the inspections previously authorized by Defendants.

Consequently, the Court concludes that the burdens imposed by Plaintiff's requested inspection can be, and have been, dealt with successfully and are not undue. *See* Fed. R. Civ. P. 26( c); *see also Morales*, 59 F.R.D. at 159 (finding no undue burden where party had previously allowed inspection of same facility).

The Court therefore **GRANTS** Plaintiff's Motion to Compel, (Doc. # 13), on terms consistent with the foregoing.

October 12, 2005

*s/ Norah McCann King*
Norah M<sup>c</sup>Cann King
United States Magistrate Judge